**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DOUGLASS PATTERSON,

       Plaintiff,      Civil Case No. 05-CV-71528

vs.

                 PAUL D. BORMAN
COUNTY OF WAYNE, WAYNE COUNTY  UNITED STATES DISTRICT JUDGE
DEPUTY SHERIFFS MICHAEL WINFREY,
AARON MEDLEY, KENNETH TOTH,
RUSSELL HERR, Individually and in Their
Official Capacities
       Defendants.
_____/

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendants County of Wayne's ("Wayne County") and four Wayne County Deputy Sheriffs'—Sergeant Michael Winfrey, Corporal Aaron Medley, Officer Russell Herr, and Officer Kenneth Toth, individually and in their official capacities (collectively, "Defendants" or individually, "Winfrey," "Medley," "Toth," or "Herr")—July 25, 2008 Motion for Summary Judgment. (Doc. No. 37). A hearing on this matter was held on October 16, 2008. Having considered the entire record, and for the reasons that follow, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion for Summary Judgment.

**I. BACKGROUND**

This case arises from an alleged attack against Plaintiff by Defendants while being transported through a tunnel between two areas of the Wayne County Jail located in Detroit, Michigan ("Wayne County Jail").

Plaintiff is a resident of Wayne County, Michigan. (Compl. ¶ 1). Defendants Winfrey, Medley, Herr, and Toth are employees of Wayne County, Michigan. (*Id*. ¶ 4).

From October 3, 2004 to February 18, 2004, Plaintiff was incarcerated as a federal detainee in the Wayne County Jail ("Jail"). (Pl.'s Resp. Ex. A, Pl.'s Dep 13:8–12). Plaintiff was being held over at the Jail awaiting arraignment on charges involving Plaintiff's escape from a community halfway house in Detroit while serving a sentence for wire fraud. (*Id*. 8:13–20).

On the morning of February 11, 2008, Plaintiff was to appear *pro se* in the U.S. District Court for the Eastern District of Michigan in Detroit before U.S. District Judge George Caram Steeh on two motion hearings. (*Id*. 11:21–12:3). Shortly before 4:37 a.m., Defendant Toth went to a cell on the second floor of Division II of the Jail to begin Plaintiff's transport to federal court. (*Id*.. 16:14–22). As Plaintiff exited the cell, Defendant Toth observed that Plaintiff was carrying a trash bag full of his property. (Defs.' Br. Ex. C). According to Plaintiff, the bag contained legal papers and copies of cases weighing anywhere between ten and twenty pounds that Plaintiff wanted to bring with him to court.[1] (Pl.'s Dep. 20:16–18, 21:5–6). Plaintiff claims that he was unable to carry all of his papers without the help of the plastic bag because of a pre-existing medical condition called polymyositis. (*Id*. 21:7–9). Defendant Officer Toth informed Plaintiff that he could take his legal materials to court but not in the plastic bag. (Pl.'s Dep. 17:10–12). Plaintiff refused to leave without his papers. (*Id.*)

A short time later, after being notified that Plaintiff refused to come out of the holding cell, Defendants Winfrey, Herr, and Medley arrived on the scene. (Defs.' Br. Ex. C). Defendant Winfrey asked Plaintiff what was the problem. *(Id*.; Pl.'s Dep. 20:8). Plaintiff alleges that he told Defendant Winfrey that he refused to go to court without his papers because he was a *pro se* litigant and that

---

[1] In the incident report written shortly after the acts in question took place, Defendant Sergeant Winfrey stated that Plaintiff "had a small stack of court papers that could easily be carried."

2

he could not carry them due to his disability. (*Id*. 20:8–14). Defendant Winfrey gave Plaintiff an ultimatum: he could carry the papers himself or leave them. Plaintiff again refused. At that point, Defendant Medley handcuffed Plaintiff with his hands behind his back. (*Id*. 22:20–23). According to Defendants, Plaintiff was handcuffed for his own safety and the safety of the officers. (Defs.' Br. Ex. C).

At least three officers—Defendants Herr, Russell, and Medley—but as many as four—including Defendant Winfrey, according to Plaintiff's recollection of the events—transported Plaintiff from Division II of the Jail to Division I of the Jail. The transport involved a descent down a flight of eight stairs from Division II to an underground tunnel and up a flight of twenty-seven stairs to Division I.

Plaintiff alleges that when he told Defendant Winfrey that he would advise the U.S. Marshals that he was forced to leave his court papers in the Jail, one of the Defendants responded, "[t]he Marshalls (sic) do not run this jail, we do." (Pl.'s Dep. 32:2–5). Then, Plaintiff claims that Defendant Herr[2] grabbed Plaintiff's handcuffs, pushing Plaintiff through the tunnel at a quickened pace, even though Plaintiff told the officers that his polymyositis prevented him from moving that quickly. (*Id*. 32:8–13). About halfway through the tunnel, Plaintiff alleges that the pace was too fast for him and he fell "face down and hit [his] head." (*Id*. 32:11–23). Plaintiff claims he was a "little dazed" and the officers stood over him telling him to get up. (*Id*. 32:23–25). When Plaintiff told them that he could not get up, Plaintiff alleges that Defendant Herr and one other officer grabbed his handcuffs

---

[2] In Plaintiff's Deposition, he describes this person as "the corporal." (Pl.'s Dep. 32:6). Of the four officers, only Defendant Medley is a corporal. Plaintiff's unsworn declaration attached to his Brief in Opposition to Defendants' Motion for Summary Judgement states that the attack was orchestrated by Defendants Winfrey and Herr and that Defendant Medley was only present during some or all of the attack. (Pl.'s Resp. Ex. A Pl.'s Dec. ¶ 5).

and dragged him face down to the bottom of the stairway (roughly seventy-five feet) going up to Division I. (*Id*. 33:1–18).

Next, Plaintiff claims that he was again picked up by the handcuffs and dragged face down up the flight of twenty-seven stairs, with his head and face bouncing on the stairs and walls at least three times. (*Id*. 40:15–22, 42:20–22). When the officers reached the top of the stairs, they dropped Plaintiff again on his face and side. (*Id*. 46:23–24). Again, Defendant Winfrey allegedly told Plaintiff to get up. (Pl.'s Resp. Ex. A, Pl.'s Dec. ¶7). When Plaintiff replied that he was unable due to his condition, Defendant Winfrey instructed two of the officers to get Plaintiff to his feet. (*Id*.). According to Plaintiff, the officers then re-dressed Plaintiff in an attempt to conceal the attack before bringing him through the main booking area where cameras were present. (*Id*.).

After the officers transported Plaintiff through the tunnel, the officers placed Plaintiff in a holding cell in the registry department at Division I (Pl.'s Dep. 47:2–4). According to Plaintiff, he told Defendant Winfrey that he needed to see a doctor, but Defendant Winfrey did not take him to a doctor and instead left him in the holding cell. (Pl.'s Dec. ¶ 9; Defs.' Br. Ex. F 2–3).

As Sergeant Mark Javor was on his way to report for duty at 6:00 a.m. that morning, he heard Plaintiff calling for him from the holding cell. (Defs.' Br. Ex. F, Javor Dep. 20:11–25). Plaintiff proceeded to tell Sergeant Javor that he had been attacked by Defendants. (*Id*. 21:1–4). Sergeant Javor then gave Plaintiff a legal pad and told him to write out a statement as to what had happened and that as soon as he was finished he would send Plaintiff up to medical. (*Id*. 21:8–17). When Defendant was finished writing out his statement, Sergeant Javor took Plaintiff's written statements and had an officer take Plaintiff to be examined by the Jail's medical staff. (*Id*. 21:18–21).

At this time, Sergeant Javor filled out an incident report, detailing his interaction with

4

Plaintiff. (Defs.' Br. Ex. F, Javor Report). In the report, Sergeant Javor wrote that Plaintiff "did have some red marks on his wrists from handcuffs, and he was holding his ribs and complaining about pain where he said they were kicking him, and dragged him up the stairs." (*Id*.). In his deposition testimony, Sergeant Javor contends that while Plaintiff did have "some redness around his wrists," Sergeant Javor did not notice any open gashes or bleeding on Plaintiff's arms, any bleeding from Plaintiff's nose, any facial swelling, or lumps or bruising on Plaintiff's head. (Javor Dep. 22:17–18, 93:19–24, 94:1–4, 95:8–13).

Finally, at 8:00 a.m. that morning, a nurse in the Jail's infirmary examined Plaintiff. (Defs.' Br. Ex. G). According to Plaintiff, the nurse examined Plaintiff's injuries on his arms, wrists, ribs, and head, and as a result, she determined that Plaintiff needed to see a doctor. (Pl.'s Dec. ¶ 10). At 8:30 a.m., Dr. Wilson began his examination of Plaintiff. (Defs.' Br. Ex. G). Dr. Wilson noted that Plaintiff had some palpable tenderness to his ribs and abrasions to both wrists with some bruising. (*Id*.). Dr. Wilson observed no open wounds to Plaintiff's arms or forearms, no bruises or knots on Plaintiff's head, no swelling to the face or nose, or other bruising or swelling on any part of Plaintiff's body consistent with being punched, kicked, or hit as Plaintiff claims. (*Id*.).

At his deposition, Plaintiff claimed that he continues to suffer from periodic nose bleeds and headaches, constant pressure in his right shoulder area, anxiety and depression, and imbalance in his gait. (Pl.'s Dep. 57:2–25). Plaintiff admits that with the exception of his anxiety and depression, no doctor has ever specifically attributed these alleged injuries to the alleged incident. (*Id*. 59:23–25, 60:1–13, 61:4–7, 61:13–18, 62:11–15). Plaintiff claims, however, that while his doctor, Dr. Laran Lerner, D.O. ("Dr. Lerner"), has not specifically attributed his injuries to the incident, Dr. Lerner is "just evaluating the whole thing, all the particular injuries that [Plaintiff has] had, that [Plaintiff

5

is] alleging that's different than what [he] had before." (*Id.* 60:10–13).

While at the Milan Federal Correctional Institution, Plaintiff was seen by the prison's medical staff on three different occasions. (Pl.'s Resp. Ex. B). On February 18, 2004, just over one month after the alleged attack, the prison's medical staff prescribed Plaintiff one Vicodin for pain. (*Id.*). The next day, the medical staff observed blood clots in Plaintiff's right nasal passage and weakness in Plaintiff's shoulder, hips, and thighs. (*Id.*). For treatment, they prescribed Plaintiff Tylenol. (*Id.*). Also while at the prison, Plaintiff went to a psychologist, who stated that Plaintiff was experiencing post-traumatic stress disorder symptoms, as a result of this alleged attack and another alleged attack by the City of Taylor police in 1998. (*Id.*).

Plaintiff filed the instant action on April 19, 2005 alleging: (1) Assault and Battery; (2) Wilful and Wanton Misconduct, Deliberate Indifference/Gross Negligence; (3) Intentional Infliction of Emotional Distress; (4) 42 U.S.C. § 1983 Deprivation for the "deliberate, grossly negligent, reckless, willful, wanton, malicious and/or intentional acts and/or omissions of Defendants"; and (5) ethnic intimidation, against the individual officers.[3] Additionally, Plaintiff alleged a 42 U.S.C. § 1983 violation against Wayne County.

## II. ANALYSIS

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine

---

[3] The Court dismissed Plaintiff's ethnic intimidation claim on January 10, 2006. (Dkt. No. 13).

issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322–23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must

set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.     Plaintiff's Claim for Relief Based on Tunnel Attack

Throughout his pleadings, Plaintiff has not raised any specific claims for relief arising out of the actions of the Defendants other than the alleged attack that took place while the officers transported Plaintiff in the tunnel between Division I and Division II. Simply put, the gravamen of Plaintiff's claim for relief is the alleged attack. Plaintiff seemingly admits this in his deposition testimony:

> Q. And you also say that *the incident that it is the basis of the lawsuit*, you say that several deputies assaulted you while you were being transported in the tunnel between Jail Division One and Jail Division Two; is that correct?
> A. Yes.

(Pl.'s Dep. 11:10–15) (emphasis added).

### C.     Dismissal of Defendant Toth

The sole basis of Plaintiff's action is the alleged attack perpetrated by the Defendants while they transported Plaintiff in the tunnel between Division I and Division II. Plaintiff admits that *Defendant Toth did not participate* in the transport of Plaintiff through the tunnel and did not assault Plaintiff. (Pl.'s Dep. 19:8–14; 22:12:16). Plaintiff has not brought forth any specific facts demonstrating that Defendant Toth was involved in any way in Plaintiff's alleged assault. Instead, Plaintiff baldly asserts that "there are numerous questions pertaining to [Defendant] Toth's culpability in this case that prevent his dismissal," including "whether [Defendant] Toth saw or

heard some or all of [Plaintiff's] beating or whether he caused it to occur." (Pl.'s Resp. 13). Plaintiff has not, however, brought forth any evidence to support its claims. As a result, Plaintiff's claim against Defendant Toth must fail.

### B. 42 U.S.C. 1983 Deprivation Claim Against the Individual Officers

In his Complaint, Plaintiff broadly asserts that

> Defendants are civilly liable to Plaintiff pursuant to 42 U.S.C. 1983, because of all the . . . deliberate, grossly negligent, reckless, wilful, wanton, malicious and or/intentional acts or omissions of Defendants, as set forth in Counts I, II, and III, were committed under the color of law and pursuant to the customs, policies and/or practices of Defendant COUNTY OF WAYNE, all of which subjected Plaintiff to deprivation of his rights, privileges and immunities secured by the United States Constitution, Amendments I, IV, V and XIV.

As indicated above, Plaintiff's cause of action revolves around the alleged attack in the tunnel between Division I and II. Therefore, because Plaintiff alleges that Defendants used excessive force in transporting him between Division I and II, Plaintiff's claim is properly characterized as an section 1983 excessive force claim.

#### 1. Source of Plaintiff's Constitutional Right to Be Free from Excessive Force

In determining whether Plaintiff presented sufficient evidence to establish genuine issues of material fact that the individual officers violated Plaintiff's right to be free from excessive force, the court should first ascertain the source of that right. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). In his Complaint, Plaintiff cites four possible sources for relief: the First Amendment, the Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment.

"The question of which amendment supplies [Plaintiff's] rights is not merely academic, for

9

the standards of liability vary significantly according to which amendment applies." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2006). For example, "[a] substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of [the Fourth Amendment]." *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001). The determination "depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Phelps*, 286 F.3d at 299 (6th Cir. 2002) (citing *Gravely v. Madden*, 142 F.3d 345, 348–49 (6th Cir. 1998)).

The Fourth Amendment provides the standard for an excessive force claim "if the plaintiff was a free citizen at the time of the incident and the use of force occurred in the course of an arrest." *Phelps*, 286 F.3d at 229. If, however, the plaintiff was a convicted prisoner at the time of the incident, then the Eighth Amendment applies. *Id*. "Finally, if a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally due process clause of the Fourteenth Amendment still provides the individual some protection against physical abuse by officials." *Id*. at 300 (citing 255 F.3d at 305–06).

At the time of the alleged incident, Plaintiff had already been detained for over four months, so clearly the Fourth Amendment's protections against excessive force during the arrest process are not applicable here.

Likewise, the Eighth Amendment protections against cruel and unusual punishment do not provide the proper constitutional basis for Plaintiff's claim because Plaintiff had not yet been convicted under the charge of which he was being held. *See Ingham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.") Although Plaintiff was arrested for escaping from a halfway house, where he was serving

time for a *prior conviction*, he had not yet been convicted and sentenced based on the circumstances surrounding that escape. Therefore, the Eighth Amendment does not govern Plaintiff's claim.

Instead, Plaintiff's excessive force claim is grounded in the Fourteenth Amendment's Due Process Clause. The alleged incident took place after Plaintiff's arrest but before any conviction or sentence regarding that arrest. *See Turner v. French*, Case No. 07-14694, 2008 U.S. Dist. LEXIS 22384 (E.D. Mich. March 21, 2008) (finding that where the plaintiff was allegedly assaulted while he was awaiting arraignment for violating the conditions of his probation for a prior conviction, his excessive force claim was properly governed under the Fourteenth Amendment). Therefore, Plaintiff is properly considered a pre-trial detainee.

### 2. Fourteenth Amendment As Applied to Plaintiff's Excessive Force Claim

As a pretrial detainee, Plaintiff is protected from any exercise of excessive force that amounts to punishment. *Graham*, 490 U.S. at 395 n.10. The Sixth Circuit has not yet had the occasion to articulate the exact level of constitutional protection against excessive force guaranteed to pretrial detainees. *See Leary v. Livingston County*, 528 F.3d 438 (6th Cir. 2008) ("While there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does, . . . we need not resolve that debate here."). It has, however, held that a pretrial excessive-force claimant must show something more than *de minimis* force. *See id*. As Defendants' note, *de minimis* injuries suggest *de minimis* force. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

Because Defendants' argue in their Motion for Summary Judgment that the objective evidence supports the conclusion that *de minimis* force was used, the Court need not look to the other circuits to determine the appropriate due process standard to be applied to Plaintiff's excessive force claim. Instead, the Court applies case law considering what constitutes *de minimis* force.

In so doing, the Court finds that Plaintiff presents sufficient evidence to allow a reasonable fact finder to conclude that *de minimis* force was not used. While it is true—as Defendants point out—that the objective medical evidence does at times appear to contradict Plaintiff's account of the incident, the objective medical evidence nonetheless presents genuine issues of material fact as to whether the officers used excessive force in transporting Plaintiff through the tunnel.

First, both Sergeant Javor and Dr. Wilson observed that Plaintiff had abrasions on his wrists. Although Sergeant Javor did not observe any bleeding as Plaintiff claims, he did state that it was "hard to say whether the cuffs were too tight, or whether somebody dragged [Plaintiff] like he said." (Def.'s Br. Ex. E., Javor Dep. 22:17–20). In addition, Dr. Wilson noted that in addition to the abrasions, he observed bruising on Plaintiff's wrists and that "there was palpable tenderness to [Plaintiff's] ribs."[4] (Def.'s Br. Ex. G, Wilson Aff. ¶ 4.b). It is important to note that Sergeant Javor's observation took place over an hour after the alleged incident occurred and Dr. Wilson's examination occurred another two and one-half hours after that.

Second, the remaining objective medical evidence, when read in the light most favorable to Plaintiff, does present genuine fact issues. In 1992, Dr. Lerner diagnosed Plaintiff with lumbar radiculopathy and prescribed a standard cane. (Defs.' Reply Ex. 3). Then, in 1998, Dr. Lerner diagnosed Plaintiff with polymyositis, proximal muscle weakness, gait disturbance, and right and left rotator cuff tendinitis and prescribed at least four weeks of physical therapy. (*Id.*) In November 2004, nine months after the alleged incident, Dr. Lerner again diagnosed Plaintiff with polymyositis, right and left shoulder cuff tendinitis, and "cervical, dorsal and lumbar mysositis with

---

[4] In fact, Dr. Wilson even sent Plaintiff to have his ribs x-rayed. (Def.'s Br. Ex. G, Wilson Aff. ¶ 4.b)

radiculopathy." (Defs.' Br. Ex. H).[5] Defendants attempt to use these existing ailments as evidence to rebut Plaintiff's claims that he suffered these injuries *as a result* of the alleged incident.

While a reasonable finder of fact certainly could weigh this evidence when assessing Plaintiff's credibility and the strength of Plaintiff's claim, such an analysis is not proper for the Court at the summary judgment stage. Instead, the Court takes Plaintiff's undisputed preexisting injuries into consideration when determining whether the objective medical evidence shows that Plaintiff's injuries were *de minimis*. For example, visible bruising and abrasions on a young person's wrists with no preexisting conditions may in fact be *de minimis*. But on a fifty year-old man with multiple preexisting conditions, where the bruising and abrasions were observed over three hours after the alleged incident, such injuries are not *de minimis*. Accordingly, the Court finds that the objective medical evidence shows that the injuries are not *de minimis* and deny Defendants' motion with respect to Count IV of Plaintiff's Complaint.

### C.     42 U.S.C. 1983 Deprivation Claim Against Wayne County

Plaintiff also brings a section 1983 claim against Defendant Wayne County alleging that Defendant Wayne County deprived him of his First, Fourth, Fifth, and Fourteenth Amendment rights.

A plaintiff can bring a claim under section 1983 against a municipality when he or she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983 (2008). While a municipality may be held liable under section 1983 for a constitutional violation directly attributable to it, section 1983 does not impose vicarious liability on a municipality for the

---

[5] Dr. Lerner also diagnosed Plaintiff with "[h]eadaches with probable close[d] head injury" and depression. (Def.'s Br. Ex. H).

constitutional torts of its employees. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). As a result, in order for a plaintiff to state a claim against a city or a county under section 1983, the plaintiff must show that his injury was caused by an unconstitutional "policy" or "custom" of the municipality. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The local government's policy or custom "must be the moving force of the constitutional violation" in order to establish liability under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 694. For a plaintiff to demonstrate municipal liability, he "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

"To succeed on a failure to train or supervise claim, [a] plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove municipal liability." *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005).

Wayne County argues that Plaintiff has not alleged a policy, practice, or custom that caused Plaintiff's alleged injuries. In his Response, Plaintiff clarifies the grounds for which he is asserting his claim. First, Plaintiff asserts that (1) Wayne County's policies prevented him from bringing his legal materials to court; (2) Wayne County caused its employees to violate Plaintiff's constitutional rights by failing to ensure that its employee know the medical history of its detainees; (3) Wayne County's policy of handcuffing disabled detainees, who show no resistance, violated Plaintiff's

constitutional rights and that by failing to train and supervise its deputies, Wayne County subjected Plaintiff to physical abuse; (4) Wayne County, through inadequate training, prevented its employees from using their discretion to have detainees seen by medical professionals; and (5) Wayne County's failure to train and supervise its employees was the proximate cause of Plaintiff's injuries.

Plaintiff's arguments are unconvincing for several reasons. First, as indicated above, Plaintiff has not adequately set forth a claim against Defendants or Wayne County for violating his due process rights to any legal materials that he may have had on his possession the day of the alleged incident. Even if he had, however, Plaintiff offers no evidence that Wayne County had a policy, practice, or custom, which prevents its detainees from bringing their legal materials to court. Instead, Plaintiff merely points to statements made by Defendants Toth and Winfrey indicating that the Jail does not provide plastic bags for its detainees to carry papers.

As to Plaintiff's remaining arguments, Plaintiff argues that he was injured due to Wayne County's failure to adequately train or supervise its employees. Plaintiff points to nothing in the record to show that there was, in fact, a failure to train. Plaintiff also fails to bring forth any evidence showing that Wayne County was deliberately indifferent to any such failure or that such failure to train caused the harm at issue here. Such mere allegations are insufficient to prove municipal liability. *See Miller*, 408 F.3d at 816.

In the alternative, Plaintiff asks the Court to order a continuance pursuant to Federal Rule of Civil Procedure 56(f)[6] to permit Plaintiff to obtain discovery from Wayne County on the issue of whether Wayne County's customs and policies violated Patterson's constitutional rights. Plaintiff

---

[6] Rule 56(f) provides in pertinent part: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present additional facts essential to justify its opposition, the court may: . . . (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be taken." FED. R. CIV. P. 56(f).

claims that these are discrete issues and will not cause undue delay.

The Court denies Plaintiff's request. Even if Plaintiff had set forth specific reasons for extending discovery in an affidavit—which he has not—the Court finds no justifiable reasons for doing so. Plaintiff first filed this lawsuit in March 2005. (Dkt. No. 1). In July 2005, he filed an Amended Complaint. (Dkt. 8). The Court has already extended discovery twice. (Dkt. Nos. 10, 17). Throughout discovery, the Plaintiff, all of the individual defendants, and several other Wayne County employees were deposed. (Defs.' Reply 5). Discovery has been closed since May 16, 2006. (Dkt. No. 18). As Plaintiff has had adequate time and opportunity for conducting discovery, further discovery is not warranted.

Therefore, the Court grants Defendants' motion with respect to Count V of Plaintiff's Complaint and denies Plaintiff's request for further discovery in his failed pursuit of this claim.

### D. State Law Claim: Assault and Battery

In addition to the federal law claims discussed above, Plaintiff seeks damages under four state law cause of action. Specifically, Plaintiff alleges assault, battery, gross negligence, and intentional infliction of emotional distress. Defendants, however, only seek dismissal of Plaintiff's assault and battery claims. They assert that they are entitled to summary judgment on Plaintiff's assault and battery claims because the objective physical evidence contradicts Plaintiff's account of the incident with the Defendants.

Under Michigan law, an assault is "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991) (citations omitted). A reasonable fact finder could conclude that the officers'

conduct constituted an assault. Plaintiff claims that after Plaintiff told the officers that he would inform the U.S. marshals about their preventing him from bringing his legal materials with him to court, Defendant Winfrey told him that the marshals do not run the jail. Plaintiff also claims that Defendant Herr ordered him to move along and be quiet. Plaintiff alleges that Defendant Herr then pushed him at a quickened pace, which ultimately resulted in him falling and hitting his head. Considering these allegations along with the undisputed fact that the transport took place in a narrow, underground tunnel (seemingly without any video surveillance) by at least three Wayne County deputies, a reasonable juror could find Defendants committed an assault against Plaintiff.

To establish a claim of battery, Plaintiff must show a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*. A jury could use the same facts to find battery that they used to find assault. There is evidence suggesting that the officers' actions were intentional and those intentional actions resulted in harmful or offensive touching. The record contains sufficient evidence to support a reasonable juror's conclusion that the officers intentionally acted to harm Plaintiff as they transported him from Division I to Division II through the tunnel.

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's state law assault and battery claims.

### III.  CONCLUSION

For all these reasons, the Court:

(1)   DISMISSES WITH PREJUDICE Plaintiff's claims against Officer Toth;

(2)   DENIES Defendants summary judgment on Plaintiff's section 1983 claim against the individual deputy sheriff defendants (Count IV);

(3)   GRANTS Defendants summary judgment on Plaintiff's section 1983 claim against

Defendant Wayne County (Count V);

(4) DENIES Defendants summary judgment on Plaintiff's state law claims of assault and battery (Count I).

**SO ORDERED.**


s/Paul D. Borman
**PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE**

**Dated: December 1, 2008**

**CERTIFICATE OF SERVICE**

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 1, 2008.**

s/Denise Goodine
**Case Manager**