UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLASS PATTERSON,

    Plaintiff,

v.

Case No. 05-71528
Honorable Judge Paul D. Borman

MICHAEL WINFREY, AARON MEDLEY,
RUSSELL HERR,

    Defendants.
_____/

OPINION AND ORDER
<u>DENYING PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59</u>

Now before the Court is Plaintiff's Motion for New Trial and/or Motion for Judgment Notwithstanding the Verdict (Dkt. No. 80.) Defendants filed a response to Plaintiff's motion for new trial (Dkt. No. 85) and Plaintiff has filed a reply to defendants' response (Dkt. No. 89). For the reasons stated herein, the Court DENIES Plaintiff's motion for new trial.[1]

**I.    BACKGROUND**

On September 30, 2009, the nine-member Federal District Court jury in this matter returned a unanimous verdict of no cause of action for the Defendants and against Plaintiff on Plaintiff's claims of excessive force and assault against three Wayne County Deputy Sheriffs in connection with his transfer through a tunnel from one area of the Wayne County Jail to another. The trial

---

[1] The Court also grants Defendants' motion to accept their response, which was filed 10 minutes past the deadline, and grants Defendants' motion to file a 2 page supplement to their response, which was inadvertently excluded from their original response. The Court notes that Plaintiff also was given additional time to reply to Defendants' response.

1

lasted 6 days, 5 of which were devoted to Plaintiff's case-in-chief. Plaintiff claimed that in the early morning hours, while on his way to a hearing in the Detroit Federal Courthouse, he was dragged up 27 stairs, causing his head and face to bounce on the stairs and against the walls. The medical doctor at the jail, who examined Plaintiff shortly after the alleged attack, observed no bleeding, swelling or bruising on Plaintiff's face or head and no bruising or swelling on Plaintiff's body consistent with having been punched, kicked or hit or dragged up 27 stairs. Plaintiff appeared in the courtroom of United States District Judge George Carem Steeh just hours after the alleged attack, and the prosecutor of his case, present in the courtroom that day, did not notice any signs of the alleged assault.

Plaintiff testified at the trial and had every opportunity, on direct, cross, redirect and re-cross, to explain to the jury his version of the facts. He was questioned at length about his claims against the three sheriff deputies and was also questioned about his prior convictions for crimes involving untruthfulness. Plaintiff testified that he had been convicted of bank and wire fraud and that, on numerous occasions, he had lied to get money:

> Q: (By Mr. Thomas): Sir, in your plans and schemes to get money, basically you were lying to get money in these fraud schemes, correct?
> A: (By Plaintiff): Yeah. Most white collar crimes, there is an element of deceit, yes.
> Q: You were deceiving people, or lying to get money. Let me ask you this, maybe I don't understand, do you make a distinction, sir, between being deceitful and lying?
> A: No, not much.
> Q: So the jury can understand that lying is the same thing as being deceitful. You were lying to get money:
> A: Yeah.
>       *    *    *
> Q: Sir, you impersonated other people to get money, isn't that true? You impersonated other people?
> A: Yes, I did.
> Q: You forged identification cards –
> A: Oh, yeah.
> Q: – to get money.

2

    A: Yes, sir.

                      \*                    \*                  \*

    Q: You were lying to get money, correct, that's what you were convicted of?
    A: Yeah.

Transcript of Record at 123-126, *Patterson v. Michael Winfrey, Aaron Medley, Russel Herr*, No. 05-cv-71528, Thursday September 24, 2009 (hereinafter Tr. at __).

Plaintiff asserts that he is entitled to a new trial because the trial was influenced by prejudice or bias by certain evidentiary rulings made by the Court and by remarks made by counsel for Defendants during the course of the trial and because the verdict was against the great weight of the evidence.

## II.    STANDARD OF REVIEW

A motion for a new trial under Federal Rule of Civil Procedure 59 is appropriate when "a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted). The Sixth Circuit has cautioned that in an action where the verdict has been rendered by a jury, a decision to grant a new trial must be "closely scrutinized" to "protect the litigant's right to a jury trial." *Id.* at 1047. Because granting a motion for new trial nullifies the jury's verdict and potentially interferes with the most important role of the jury to be the sole finder of fact, "a jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable." *Id.* Thus, if a reasonable juror could come to the challenged verdict, the motion for new trial must be denied. If a verdict is challenged on the basis of prejudice, the claim of prejudice must be evaluated in the "context of the entire record" and in view of any curative instructions given by the

3

court. "Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'" *Holmes*, *supra* at 1046-47 (citing *Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)).

## III. ANALYSIS

In his motion for new trial, Plaintiff advances three principal arguments: (1) that the Court erred in certain evidentiary rulings and in not providing all exhibits to jury, to the prejudice of the Plaintiff; (2) that remarks made by counsel for Defendants during questioning and in closing argument prejudiced the jury; and (3) that Defendants' witnesses and exhibits were not credible and that the verdict was against the great weight of the evidence.

### A. The Court's Evidentiary Rulings

A trial court's evidentiary rulings are reviewed for an abuse of discretion because "the trial judge understands each item of evidence and its place in the web of other evidence in a way that no appellate court can." *In Re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir. 1996). Even if an abuse of discretion on an evidentiary matter is shown, a new trial is not warranted unless there is a showing of actual prejudice caused by the alleged errors, *i.e.* that the errors "had a substantial effect on the final result." *Id*. at 532-33

(1) Plaintiff contends that the Court erred in "permitting the hearsay evidence regarding the FBI to come into evidence through Detective Bemis' reports and related reports, especially when Plaintiff objected to that and was prevented from calling a rebuttal witness, Special Agent Kelli Hodges."

First, Plaintiff's counsel expressly stipulated in writing, prior to the start of trial, to the

4

admissibility of all of Defendants' exhibits, which included Detective Bemis' internal affairs file. (Defs.'s Resp. 5, Ex. A.) Although Plaintiff's counsel attempted to object to the admissibility of Detective Bemis' report at trial, counsel admitted to the Court that she had in fact stipulated to the admission of all of Defendants' exhibits, including Detective Bemis' report. Plaintiff waived any objection to the admissibility of the report and the Court did not abuse its discretion in admitting the report. Additionally, the Court agrees with Defendants that a foundation was properly laid for the report's admission into evidence as a Wayne County business record.

Plaintiff also contends that the Court erred in preventing him from calling Special Agent Kelli Hodges as a rebuttal witness. "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990) (internal quotation marks and citation omitted). The trial court has broad discretion in deciding whether to admit rebuttal evidence. *Id.* at 1031-32. As Defendants point out in their brief, the Plaintiff called Detective Bemis in his case in chief and it was during Detective Bemis' testimony that Special Agent Hodges' involvement was revealed. Plaintiff could have, but did not, call Special Agent Hodges during its case in chief to rectify any issues Plaintiff believed to have been presented by Detective Bemis' testimony. In their case in chief, the Defendants called only the deputies who transported Plaintiff through the tunnel, and the Assistant United States Attorney who prosecuted Plaintiff on criminal charges, none of whom testified about Special Agent Hodges. Thus, as Defendants argue, they presented no testimony that Special Agent Hodges was competent to rebut. The Court properly denied Plaintiff's request to call Special Agent Hodges.

(2) Plaintiff contends that the Court erred in "not giving a curative instruction regarding the

impeachment of Dr. Lerner." At the trial, Defendants' counsel began to examine Plaintiff's treating physician, Dr. Lerner, about an administrative complaint that had recently been filed against him. Plaintiff's counsel immediately objected and the Court held a sidebar. (Pl.'s Reply Br. Ex. A, Trial Tr. Excerpt.) Plaintiff's counsel was unaware of the existence of the administrative complaint and objected that it should have been the subject of a motion *in limine*. The Court agreed that it should have been handled by a motion *in limine*, but stated that if it had been, the Court would have allowed mention of the existence of the administrative complaint. The Court granted Plaintiff's counsel a recess to discuss the matter with Dr. Lerner and ruled that it would permit mention of the fact that there had been a complaint filed and would allow Plaintiff to inquire of Dr. Lerner further regarding the filing of the complaint. There was no suggestion that the allegations contained in the administrative complaint had been proven or that Dr. Lerner had been reprimanded or found guilty. The complaint itself was never introduced into evidence and the Court's ruling allowing mention of the fact that it had been filed, and giving Plaintiff an opportunity to have Dr. Lerner confirm or deny the fact of the filing, was appropriate.[2] Further, Dr. Lerner was given an opportunity on direct examination to explain away the complaint, and did so.

---

[2] Plaintiff's counsel attempts to make an issue of the means by which Defense counsel obtained the administrative complaint against Dr. Lerner. The Court does not see the significance of this but notes that the Affidavit provided by Defense counsel indicates that the information was obtained through a routine search of the Michigan Department of Community Health website which indicated that an open formal complaint had been filed against Dr. Lerner. Defense counsel then obtained copies of the information through a follow-up Freedom of Information Act email to the individual listed on the website. The Court finds nothing improper in the manner in which Defense counsel obtained this information and does not feel that Defense counsel's statement that she obtained this information through a public database search was misleading. The Court notes that Plaintiff's counsel could, and likely should, have done the same thing, which would have prevented her surprise at Defense counsel's mention of the filing of the administrative complaint against Plaintiff's treating physician.

(3) Plaintiff contends that the Court erred in "not curing the fact that Defendants referred to Plaintiff in this litigation as a 'plaintiff' in West Virginia, when that reference had been barred by an earlier court ruling." As part of their defense that Plaintiff's injuries were the result of incidents other than the claimed excessive force in the instant case, Defendants sought to introduce evidence that Plaintiff claimed to have been injured in a subsequent incident, during an incarceration previous to this trial, in West Virginia. In an earlier ruling on Plaintiff's motion in limine, the Court ruled that Defendants were precluded from introducing evidence that there had been litigation as a result of the West Virginia incident, unless Plaintiff denied making the injury claims set forth in that complaint. Thus, under the Court's ruling, Defendants were permitted to question Plaintiff about his injuries at the West Virginia facility but were precluded from mentioning any subsequent litigation, unless Plaintiff denied the prior statements regarding those injuries. When Defense counsel began to question Plaintiff about the West Virginia incident, counsel read Plaintiff's handwritten notes verbatim, in which Plaintiff had referred to himself as "plaintiff." Plaintiff's counsel objected. The Court sustained the objection and instructed counsel to rephrase the question, also instructing the jury that counsel's questions were not evidence. The West Virginia complaint was never introduced into evidence. While the Court finds it unlikely that the jury would have read anything prejudicial into this remark, any potential prejudice was cured by this Court's instruction. A jury is presumed to have followed a court's curative instructions. *Holmes, supra* at 1047.

(4) Plaintiff contends that the Court erred "in not providing all of the exhibits in this case to the jury when requested by Plaintiff's counsel." A district court has broad to discretion to authorize the jury to take exhibits admitted into evidence into the jury room with them. *United States v. Scaife*, 749 F.2d 338, 347 (6th Cir. 1984). The Court made all of the admitted exhibits in this case

7

available to the jury upon request and made this availability clear to the jury when they began deliberations. Throughout their deliberations, all exhibits were provided that were requested. Plaintiff suffered no prejudice by the Court's decision to make the exhibits available as requested.

**B.     Defense Counsel's Alleged Misconduct**

In determining whether counsel misconduct has influenced the decision of the jury, "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). The trial court is in the best position to make these determinations:

> [T]he determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court. Indeed, whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination. The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial . . . The trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.

*Id.* (internal quotation marks and citations omitted).

Plaintiff contends that the jury was prejudiced by Defense counsel's reference, in cross-examining Dr. Spinazola, to an incident involving Plaintiff and an allegedly stolen car. (Pl.'s Reply Br. Ex. C, Trial Tr. Excerpt) Dr. Spinazola was called to testify regarding Plaintiff's claimed post-traumatic stress disorder. Defense counsel was trying to ascertain, on cross-examination, whether it would have been significant to a psychiatrist treating Plaintiff for post- traumatic stress disorder that Plaintiff had previously claimed to have experienced post-traumatic stress disorder in connection with an earlier incident with the Taylor Police Department involving Plaintiff's removal

8

from an allegedly stolen car in which he was riding as a passenger. The Court held a sidebar when the topic of the Taylor incident was first raised and the Court concluded that the inquiry was relevant to the issue of Plaintiff's claimed post-traumatic stress disorder as a result of the incidents at issue in this case. On redirect, Plaintiff's counsel was able to establish that the Taylor incident involved a rather lengthy test-drive of a dealership-owned car and that Plaintiff, who was a passenger in the car, was never accused or convicted of having stolen the car. The Court later specifically instructed the jury to disregard any reference to a stolen car. Further, Plaintiff testified at length about this incident and explained away the stolen car issue:

> Q: (By Ms. Faupel): Just before we leave the issue of that Taylor incident, were you ever charged with stealing a car?
> A: (By Plaintiff): No.
> Q: Did you ever steal a car?
> A: No; no, ma'am.
> Q: Were you ever convicted of stealing a car?
> A: No.
> Q: And, in fact, was there – did you get charged with something.
> A: I guess it's the cigarettes.
> Q: And at some point in time did you plead in some fashion to that?
> A: Yes, I did.
> Q: And what kind of a plea was it?
> A: I guess no contendere.
> Q: Nolo contendre, which means no contest.
>
> (By the Court: A little louder, please, sir. Thank you.)
>
> A: Nolo contendre, I believe it was.
> Q: All right. And what was the result, Mr. Patterson?
> A: It was eventually – it was dismissed.
> Q: The whole thing was dismissed, right?
> A: Yes.
>
> Q: So, is this idea that you stole a car true?
> A: No.

Tr. at 11-12.

There is a strong presumption that a jury will understand and will follow a court's curative instructions. *Holmes, supra* at 1047. There is no basis to conclude, as Plaintiff suggests, that the jury disregarded the Court's explicit instruction, and ignored Plaintiff's counsel's clarification of the incident on redirect, and made a contrary assumption that Plaintiff had in fact stolen a car. Viewing counsel's comment in light of the totality of the circumstances, it is unlikely that the jury made the prejudicial connection that Plaintiff infers. Additionally, given the manner in which the Court handled the remark, i.e. specifically instructing the jury to disregard any reference to a stolen car, the Court concludes that counsel's reference to an allegedly stolen car did not influence the decision of the jury.[3]

## C. The Weight of the Evidence

"In considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, the court is not to set aside the verdict simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). The Sixth Circuit has made clear that it will overturn a trial court's "grant of a motion for new trial on the basis that the verdict was against the weight of the evidence where it is clear that the jury verdict was reasonable." *Id.* "[A] jury's verdict should not be overturned as being against the weight of the evidence unless the verdict was unreasonable." *Holmes, supra* at 1047. In *Holmes, supra* the Sixth Circuit did overturn a trial court's grant of a motion for new trial in a case, like the present case, that "came down to a question of who the jury believed . . . ." 78 F.3d at 1048. If the

---

[3] Plaintiff also claims that Defense counsel made a remark concerning a stolen car in her closing argument but provides no transcript to support her assertion, which Defense counsel denies. The Court concludes, however, that in view of the multiple instructions given to the jury cautioning that argument by counsel is not to be considered evidence in the case, the jury would not have been influenced by such a statement even if it had been repeated in Defense counsel's closing remarks.

10

jury in this case, having heard both versions of the facts, could reasonably have found for the Defendants, this Court cannot overturn that decision.

The jury in this case was presented with the testimony of witnesses who both observed and examined Plaintiff in the hours following the alleged assault and who testified to an absence of the serious injuries claimed by Plaintiff. An Assistant United States Attorney who observed Plaintiff in Judge Steeh's courtroom just hours after the alleged attack, saw no visible signs of injury. The jail medical records that were most contemporaneous with the alleged attack indicated only bruising about the wrists consistent with handcuffing and specifically noted the absence of any bruising, swelling or bleeding about the head. X-rays of Plaintiff's ribs taken the morning of the alleged attack came back negative. Dr. Spinazola, who testified regarding Plaintiff's alleged post-traumatic stress disorder, verified that Plaintiff was examined 6 days after the alleged assault by medical personnel and that notes of that exam indicate that Plaintiff did not mention the alleged assault nor did Plaintiff report to the examiner at that time any trauma to his head or upper body.

All of this testimony, which the jury obviously chose to believe, discredited Plaintiff's claim that he had been brutally dragged up 27 flights of stairs with his head banging against the steps and walls. Plaintiff was given every opportunity to put before the jury all of the facts that he felt supported his claim and to try to spin those facts to his advantage. Plaintiff was even permitted to present a relatively graphic re-enactment of his version of the facts, bringing a life-sized dummy into the courtroom, with hands cuffed behind the back, to bolster his claim that he had been assaulted in the tunnel that day.

That the jury chose not to believe Plaintiff's version of the facts was not unreasonable given the evidence presented by both sides, which included credible evidence contradicting Plaintiff's

11

alleged injuries and Plaintiff's own testimony that he had lied on multiple occasions to get money. Notwithstanding any evidence to the contrary Plaintiff presented, a reasonable juror could have chosen to believe Defendants' version of the facts rather than Plaintiff's. This Court cannot overturn the jury's reasonable verdict.

## IV. CONCLUSION

The Court concludes that there was no abuse of discretion and no prejudice to Plaintiff as a result of any of the challenged evidentiary rulings and that any claimed misconduct by Defense counsel did not influence the jury's verdict. The Court concludes that the jury's verdict for Defendants and against Plaintiff was reasonable and not against the weight of the evidence.

The Court DENIES Plaintiff's Motion for New Trial.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 24, 2010.

s/Denise Goodine
Case Manager